## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SIERRA CLUB
2101 Webster Street #1300
Oakland, CA 94612

    Plaintiff,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY
1200 Pennsylvania Avenue, NW
Washington, D.C. 20004

    Defendant.

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Case No.: 1:19-cv-03018

---

### INTRODUCTION

1. In this action, Plaintiff Sierra Club, the nation's oldest and largest grassroots environmental organization, challenges Defendant United States Environmental Protection Agency's ("EPA") refusal to provide any records in response to a request by Sierra Club under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. As detailed below, Sierra Club's FOIA request sought all records that EPA may possess supporting a public statement by EPA Administrator Andrew Wheeler in a nationally televised interview, in which he purported to characterize the facts and science of climate change, an important public policy issue that his agency researches and regulates.

2. Sierra Club seeks declaratory, injunctive, and any other appropriate relief to remedy EPA's failure to provide records in response to Sierra Club's request, in violation of FOIA or, alternatively, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06.

1

3. EPA's fundamental mission is to protect human health and the environment. *See, e.g.*, 33 U.S.C. § 1251(a); 42 U.S.C. §§ 6901(b), 7401(b). However, under the leadership of former Administrator Scott Pruitt and now current Administrator Wheeler, EPA has often shirked that core duty in favor of an industry-backed agenda to roll back crucial public health and environmental protections. Instead of relying on the well-founded conclusions of career scientists and striving first and foremost to protect human health and the environment, EPA has inappropriately advanced the interests of regulated industries, including the fossil fuel industry, which stand to benefit from decreased oversight and freer rein to pollute without consequence. EPA has premised these harmful rollbacks on faulty rationales in purporting to justify the agency's neglect of its core statutory mission.

4. As just one example, in 2017, then-Administrator Pruitt chose to go on national television and dispute that humans' carbon dioxide emissions are a primary contributor to global warming—flatly contrary to the scientific consensus embraced by his own agency (and other authorities). A subsequent FOIA request and lawsuit brought in this Court by another citizen group revealed that the Administrator's assertions were in fact baseless.

5. Administrator Wheeler has followed in his predecessor's footsteps in asserting supposed "facts" that are meant to undercut the urgency and gravity of climate change, yet that contradict the scientific consensus and, indeed, appear simply unfounded. Meanwhile, his agency continues more broadly to downplay or conceal climate truths as it attempts to delay, weaken, or eliminate critical public health and environmental protections.

6. In a television interview with CBS News aired on March 20, 2019, Administrator Wheeler asserted that "most of the threats from climate change are 50 to 75 years out."

That statement to the American public—a characterization of objective scientific fact by the head of an agency that is supposed to regulate based on facts—has no apparent basis.

7. To get to the bottom of Administrator Wheeler's statement, Sierra Club submitted a FOIA request to EPA on April 22, 2019, seeking all records (if any) that Administrator Wheeler relied on in asserting that "most of the threats from climate change are 50 to 75 years out," as well as all records (if any) that EPA possesses that supporting that conclusion. **Exhibit A** hereto.

8. EPA initially signaled that it would comply with Sierra Club's request and was diligently searching for responsive records. However, after consultations between the agency's internal offices, EPA instead categorically denied Sierra Club's FOIA request, issuing a final determination letter on June 20, 2019, in which the agency claimed that Sierra Club's request was not adequately specific in describing the records sought. **Exhibit B** hereto. (Incidentally, EPA provided this formal threshold compliance determination belatedly, after the statutory deadline to do so had passed.) As a result, EPA refused to provide any records in response to Sierra Club's request.

9. EPA's 'not reasonably specific' determination as to Sierra Club's request is flatly irreconcilable with legal as well as practical precedent. As discussed below, this Court recently rejected the same argument by EPA in a controversy over a squarely analogous FOIA request related to a statement about climate change by former Administrator Pruitt. Moreover, and perhaps even more deflating to the agency's contention now, EPA in fact was then able to succeed in cognizing and responding to that request as a practical matter, despite averring before that the request was too vaguely phrased to facilitate a response.

10. Sierra Club timely filed an administrative appeal in July of EPA's adverse determination, **Exhibit C** hereto, but EPA has not ruled on Sierra Club's appeal. The statutory deadline for EPA to issue its disposition on the appeal came and went in August, as did successive subsequent pledges by EPA to issue a decision in the weeks thereafter. Specifically, as the effective date of Sierra Club's administrative appeal was July 12, 2019, EPA's statutory deadline to rule on that appeal was August 23, 2019—an extended deadline that already accounts for the agency invoking the statute's single, two-week extension available in "unusual circumstances." On August 22, EPA told Sierra Club that the agency was close to finalizing its ruling but needed another week. Then, on August 30, EPA said it needed two more weeks. Lastly, on September 13, EPA advised that it needed an indefinite amount of additional time. Through it all, EPA has continually declined to explain the reasons behind its failure to respond to Sierra Club's multiple requests. The agency likewise refused in mid-September to identify a firm date by which it would rule (belatedly) on the administrative appeal.

11. Due to EPA's pattern of delay, repeated reneging, and failure to communicate, Sierra Club has no basis to know when—or if—EPA will ever rule on its appeal. At this point, having patiently waited for weeks beyond the statutory and later-pledged deadlines, Sierra Club has more than exhausted its administrative remedies, and thus is now forced to file this lawsuit in order to vindicate its rights under FOIA.

12. EPA is obligated to make non-exempt records "promptly available to any person" in response to "any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and

procedures to be followed." 5 U.S.C. § 552(a)(3)(A). By denying Sierra Club's request and refusing to provide any responsive records, EPA has violated its legal duties.

13. Sierra Club brings this suit in order to hold EPA accountable under the law and to promote the transparency in government that FOIA guarantees. Sierra Club seeks to educate the public about whether Administrator Wheeler, speaking to the people in his official capacity, either relied on or, conversely, disregarded the scientific research and conclusions embraced by his own agency. EPA is frustrating that purpose by refusing to produce the records that Sierra Club has properly requested. EPA must be held responsible for showing the basis of the ostensibly factual information that the agency, including its Administrator, chooses to disseminate to the public under the guise of the institution's scientific credibility and regulatory authoritativeness.

14. Sierra Club's request furthers its longstanding interest in protecting our nation's public health and natural resources, as well as its interest in promoting government accountability and transparency in connection with those critical issues.

15. Sierra Club respectfully requests that the Court order EPA to fulfill its statutory obligations and promptly produce any responsive, non-exempt records that the agency is withholding in violation of FOIA (and/or the APA), as discussed herein.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) as well as 28 U.S.C. § 1331.

17. Venue in this forum is proper pursuant to 5 U.S.C. § 552(a)(4)(B), which provides for the hearing of FOIA cases in, among other proper venues, the district in which responsive records may be found, and in the District of Columbia. Venue is also proper under 28

U.S.C. § 1391, which provides that a civil action may be brought in the district where the defendant resides when the defendant is the government or a government agency.

18. Declaratory relief is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

19. Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B) as well as 28 U.S.C. § 2202.

20. The Court may award reasonable costs and attorney fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

21. Plaintiff Sierra Club is incorporated in the State of California as a Nonprofit Public Benefit Corporation, with its headquarters located at 2101 Webster Street, #1300, Oakland, CA 94612. Founded in 1892, Sierra Club is the nation's oldest grassroots environmental organization. It is also the largest, with more than three million members and supporters nationwide. Sierra Club is dedicated to protecting and preserving the natural environment and the human environment. Its core purposes include exploring, enjoying, and protecting the wild places of the Earth; practicing and promoting the responsible use of the Earth's ecosystems and resources; and educating and enlisting humanity to protect and restore the quality of the natural and human environments.

22. Sierra Club is a leading non-governmental organization that seeks to educate and mobilize the public on issues of climate change, fossil fuel energy, clean energy, clean air, and clean water, and to promote government accountability and transparency in connection therewith. Sierra Club has long conducted multiple public campaigns around these issues, including its Beyond Coal Campaign and Dirty Fuels Campaign. Sierra Club regularly submits FOIA requests as part of its mission and work. Sierra Club broadly and

publicly disseminates the information it receives from FOIA requests so as to further the public's understanding about how our government's operations and activities bear on important issues such as human health, the environment, and our government's faithful execution of related laws.

23. Sierra Club brings this action on its own behalf and on behalf of its members. Sierra Club and its members have been, are, and will continue to be injured by EPA's unlawful failures to provide requested records and compliance determinations regarding the same, as mandated by FOIA. The relief requested herein will redress those injuries.

24. Defendant EPA is an agency of the executive branch of the United States government within the meaning of 5 U.S.C. § 551(1). EPA is responsible for implementing various federal environmental and public health laws. Its headquarters are located at 1200 Pennsylvania Avenue NW, Washington, D.C. 20460. EPA has in its possession and control records sought by Sierra Club and, as such, is subject to FOIA pursuant to 5 U.S.C. § 552(f).

## **LEGAL FRAMEWORK**

25. The fundamental purpose of FOIA is a crucial, eminently American one: to promote transparency and accountability in government. *See Bristol-Myers Co. v. Fed. Trade Com.*, 424 F.2d 935, 938 (D.C. Cir. 1970) ("the primary purpose of the Freedom of Information Act was to increase the citizen's access to government records."). To that end, FOIA requires that federal executive agencies release all documents and other records in their possession upon request by a member of the public, except records that fall under one of the statute's narrowly-construed exemptions. 5 U.S.C. § 522(a)-(b); *see also, e.g.*, *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (exemptions are

"explicitly made exclusive" and "must be narrowly construed."); *Bristol-Myers Co.*, 424 F.2d at 938 ("The legislative plan creates a liberal disclosure requirement, limited only by specific exemptions which are to be narrowly construed.").

26. Whereas "FOIA does not compel an agency to reply to questions disguised as FOIA requests," such a situation does not arise when the request "reasonably describe[s] an actual record." *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 103 (D.D.C. 2012) (holding that an inmate's request to learn information did not qualify as a proper FOIA request when the inmate did not file a corresponding record request). Accordingly, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 522(a)(3)(A). The requirement for a reasonable description "is 'not to be used as a method of withholding records,'" but instead simply calls for "'a reasonable description enabling the Government employee to locate the requested records.'" *Bristol-Myers Co.*, 424 F.2d at 938 (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 8 (1965)).

27. As this Court has previously explained, "[t]he public statements of an agency head about the causes of climate change, even if those statements do not reflect an 'Agency decision,' but merely 'personal opinion,' may nonetheless guide the agency's regulatory efforts and, to the extent any agency records provide the basis for such public statements, those agency records are a perfectly proper focus of a FOIA request." *Pub. Emps. for Envtl. Resp. v. U.S. Envtl. Prot. Agency* ("*PEER*"), 314 F. Supp. 3d 68, 77 (D.D.C. 2018). Further, agencies may not contend (as EPA has in the past) that "the evidentiary basis for

a policy or factual statement by an agency head . . . is inherently unknowable," as such argument "runs directly counter to an axiom of administrative law." *Id.*

28. The requestor may file an administrative appeal of an adverse determination. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). If, on appeal, the agency upholds its adverse determination, the requestor may seek judicial review. 5 U.S.C. § 552(a)(6)(A)(ii), 40 C.F.R. § 2.204(*l*). To the same end, if the agency fails to rule on an administrative appeal by the statutory deadline—specifically, within 20 working days, extendable up to 30 working days if the agency provides written notice of "unusual circumstances"—the requestor is deemed to have exhausted administrative remedies and may likewise seek judicial review. 5 U.S.C. § 552(6)(C)(i); *see also id.* § 552(6)(A)(i)(III)(aa) & (6)(A)(ii); *Competitive Enter. Inst. v. U.S. Envtl. Prot. Agency*, 232 F. Supp. 3d 172, 182 (D.D.C. 2017).

29. A reviewing court shall determine *de novo* these questions of compliance, extenuating circumstances, and the propriety of withholding records; and the agency bears the burden of justifying its action or inaction. 5 U.S.C. § 552(a)(4)(B).

30. In the alternative to FOIA, an agency's response to a FOIA request is subject to judicial review under the APA. The APA generally confers a right of judicial review on any person who is adversely affected by agency action. 5 U.S.C. § 702. The APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), and to set aside any agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law," *inter alia*, *id.* § 706(2)(A), (C), (D).

## STATEMENT OF FACTS

### *Administrator Wheeler's Statement, and Sierra Club's FOIA Request*

31. On March 20, 2019, Administrator Wheeler appeared in his official capacity on a televised interview in which he stated that "most of the threats from climate change are 50 to 75 years out." CBS News, Interview of EPA Administrator Andrew Wheeler by chief Washington correspondent, Major Garrett, aired on March 20, 2019, at ~18:30-18:40, available at: https://www.cbsnews.com/news/epa-administrator-andrew-wheeler-exclusive-interview/.

32. Administrator Wheeler's assertion directly contradicts the clear consensus of the scientific community, including the United States' own Fourth National Climate Assessment—a monumental work authored by scientists from 13 federal agencies including EPA, and published months before the Administrator's interview. *See* https://www.globalchange.gov/agencies. Among the Assessment's many findings are the following: "Earth's climate is now changing faster than at any point in the history of modern civilization, primarily as a result of human activities"; "The impacts of global climate change are already being felt in the United States"; and "Observations collected around the world provide significant, clear, and compelling evidence that global average temperature is much higher, and is rising more rapidly, than anything modern civilization has experienced, with widespread and growing impacts." Fourth National Climate Assessment, Vol. II (Nov. 2018), at 34, 36, available at: https://nca2018.globalchange.gov/downloads/NCA4_2018_FullReport.pdf.

33. Administrator Wheeler's statement is one incident in a string of instances of non-scientist agency actors in the Trump administration downplaying climate change in a broader

crusade to stall, weaken, or eliminate various regulatory protections that are critical to

protecting public health and the environment. For example, it was revealed earlier this

month that White House officials deleted, from a regulatory proposal drafted by EPA and

the National Highway Traffic Safety Administration, both the statement that "global

climate change is a serious challenge" and a citation to the above-referenced Fourth

National Climate Assessment. E&E News, "Climate language deleted from car rules

document" (Oct. 3, 2019), available at https://www.eenews.net/stories/1061195729. In

the same vein, in September, Sen. Debbie Stabenow, ranking member of the Senate

Agriculture Committee, published a report identifying dozens of instances in which the

Trump administration censored or minimized climate science in federal agencies,

including EPA. Politico, "Senate Democrats release list of climate studies buried by

Trump administration" (Sept. 19, 2019), available at

https://www.politico.com/story/2019/09/19/climate-studies-hidden-by-trump-

administration-1753631?cid=apn. And, in August, a scientist who ran the U.S. Centers

for Disease Control's climate and health program filed a whistleblower complaint after he

was ordered by his agency to drop work on climate issues. Reuters, "Climate expert at

CDC poised to file whistleblower complaint over treatment" (Aug. 14, 2019), available at

https://www.sciencemag.org/news/2019/08/climate-expert-cdc-poised-file-

whistleblower-complaint-over-treatment. These are only a few examples.

34. Sierra Club submitted a FOIA request on April 22, 2019, probing the basis for

Administrator Wheeler's March 20 public assertion about climate harms, in order to

promote transparency and accountability for his public and ostensibly authoritative

characterization of scientific fact on an important and contentious issue in his agency's

purview. Specifically, Sierra Club asked for the following in a request that would be

designated Request No. EPA-HQ-2019-005176:

> (1)     All records that Administrator Wheeler relied on in asserting that "most of the threats from climate change are 50 to 75 years out"; and
>
> (2)     All records produced, commissioned, or otherwise obtained by EPA that support the conclusion that "most of the threats from climate change are 50 to 75 years out," other than any encompassed by (1).

Exhibit A at 1.

35. Sierra Club's FOIA request expounded the types of "records" sought, *id.* at 1 n.1;

provided EPA with instructions on the timing, format, and delivery of the agency's

response, *id.* at 2; addressed the issues of exemption and failure to respond, *id.*; and

requested a fee waiver, *id.* at 3-5. Sierra Club received electronic confirmation of EPA's

receipt of the request the same day the request was submitted.

### *Follow-Up on Sierra Club's Request, and EPA's Ultimate Adverse Determination*

36. On April 25, 2019, an EPA Government Information Specialist in the National FOIA

Office contacted the undersigned counsel for Sierra Club by telephone, asking to set up a

broader call to discuss the request. Sierra Club responded that it would be happy to

discuss the request, while communicating its belief that the written request was clear on

its face and otherwise proper. Additionally, Sierra Club offered to email the agency, as

instructive guidance for consideration, the 2018 decision by the U.S. District Court for

the District of the District of Columbia in *PEER*, noted above, along with the associated

FOIA request and legal complaint in that case. The EPA staff member indicated she was

not familiar with the *PEER* case.

37. Sierra Club explained that the *PEER* case involved an analogous request, by another non-profit organization to EPA, in connection with a 2017 assertion by then-Administrator Pruitt about climate change on a nationally televised interview. In that case, EPA refused to comply with a citizen group's request on the ground, *inter alia*, that the request was an improper interrogatory and did not reasonably describe specific documents. The court rejected EPA's reasoning and ordered the agency to comply with the organization's request. Then, EPA proceeded to successfully comply with the request, consulting with then-Administrator Pruitt and providing the requester with the Administrator's pre-interview notes as well as confirmation about what records he had, and had not, relied on. The EPA staff member told Sierra Club that the agency would welcome those materials, which Sierra Club then emailed. Sierra Club also agreed to join a call with EPA staff on April 29, 2019.

38. On April 29, the EPA staff member called Sierra Club to advise that EPA needed to reschedule the planned call and would get back in touch about alternative times.

39. On May 1, Sierra Club, not having heard back from EPA, emailed the agency to inquire about the rescheduling. The same day, EPA provided Sierra Club with written notice that its FOIA request was being assigned to EPA's Office of the Administrator for processing. On May 2, the EPA staff member wrote to Sierra Club that she would not be arranging a follow-up call in light of the assignment of Sierra Club's request to the Office of the Administrator.

40. On May 3, 2019, EPA provided Sierra Club with written notice that its fee waiver request was "not applicable as the request is not billable." EPA further explained, "we have

determined your [fee waiver] request does not reach the minimum billing amount," and
"[t]herefore, no charges are associated in processing your request."

41. On May 17, 2019, an EPA attorney-advisor emailed Sierra Club asking to set up a call to
discuss the request on May 20. He additionally advised: "As a status update, the EPA has
initiated searches for the records you requested and we are currently waiting on the
results."

42. On May 20, 2019, the EPA attorney-advisor emailed Sierra Club to advise that the
agency was "exercising a ten-day extension for unusual circumstances on this request
pursuant to 5 U.S.C. § 552(a)(6)(B)(i)." He went on to explain: "The reason for the
extension is EPA needs to consult with two or more components internally to gather the
records you requested.  As noted in my previous email, that search is already under way."

43. Later that day, Sierra Club and EPA held their planned call, on which the EPA attorney-
advisor reaffirmed that the agency had initiated searches and reached out to staff across
EPA. He further advised that once he received responses, he would review the records
produced, redact the records if necessary and appropriate, do a final quality-check
review, and then share such documents. He indicated that he expected an update perhaps
within a couple weeks' time. Also, Sierra Club acknowledged, but did not concede the
underlying need for, EPA's invocation of "unusual circumstances" extension.

44. EPA's statutory deadline to communicate to Sierra Club its determination on the
threshold question of whether it would comply with the FOIA request was due on June 3,
2019, or 30 working days from April 22, 2019. EPA's claim of unusual circumstances
had served to extend the agency's statutory deadline to communicate its threshold
determination on whether the agency would comply with Sierra Club's request, extending

by 10 working days the default deadline of 20 working days from when the agency

received the request. 5 U.S.C. § 552(a)(6)(A)(i) & (B)(i).

45. On June 6, 2019, more than two weeks after the parties had spoken, Sierra Club emailed

the EPA attorney-advisor to inquire about the status of EPA's progress. Sierra Club also

noted that the statutory deadline for the agency to communicate its threshold compliance

determination had passed.

46. On June 11, 2019, still having heard nothing back from EPA, Sierra Club sent another

email inquiry. Later that day, the attorney-advisor replied via email, indicating that the

agency was working on Sierra Club's request and that he would circle back as soon as he

knew more.

47. Sierra Club wrote back that same day to ask for explicit clarification on whether or not to

interpret EPA's response as affirming that the agency had indeed made the threshold

statutory determination, under 5 U.S.C. § 552(a)(6)(A)(i), that it would comply with

Sierra Club's request—as Sierra Club had assumed was the case, given EPA's assertions

weeks earlier that the agency had begun searching for responsive documents.

48. On June 20, 2019, Sierra Club received a phone call from EPA, this time from a senior

agency attorney, with the same attorney-advisor also on the line. On the call, the senior

attorney indicated that, after having looked at Sierra Club's request and having conferred

with individuals at its Office of Air and Radiation, EPA had decided that the request was

not "reasonably specific" and therefore would not respond to it. In other words, EPA was

providing an adverse determination on the threshold question under of whether the

agency would comply. (Again, such determination should have been provided to Sierra

Club no later than June 3.)

49. The senior attorney asked if there were other records in which Sierra Club might be interested, such as literature about climate change generally, independent of whether the Administrator relied on it as a basis for his statement in question. Sierra Club responded that it believed its request was already reasonably specific and was otherwise cognizable and proper. Sierra Club further noted that a modified request instead for general records about climate change (*i.e.*, not for any records specifically consulted for, or otherwise supporting, Administrator Wheeler's statement) would be a fundamentally distinct and inadequate substitute.

50. Sierra Club asked the senior EPA attorney on the call whether the individuals who apparently were apparently were driving the agency's new decision categorically not to respond to Sierra Club's request were familiar with the Court's *PEER* decision, or with the agency's proven ability after that decision to successfully comply with a FOIA request squarely analogous to Sierra Club's instant request. The senior attorney responded that he had not reviewed the decision and was not sure whether others had or not, though he thought the Office of Air and Radiation was generally aware of it.

51. Sierra Club offered to re-email the *PEER* decision and associated materials to EPA (having previously done so in April) and to give the agency until July 8 (*i.e.*, another 15 days) to review that decision and respond with a reassessment of whether Sierra Club's request was not reasonably specific. The senior attorney agreed, saying that sounded like a good plan, and asked Sierra Club to provide the *PEER* opinion, indicating that agency staff would look at it, see if it changed anyone's mind, and consider whether the request needed to go higher up the decision-making chain at the agency. He agreed that EPA would respond in writing by July 8.

52. Approximately two hours later, around 7:00 pm on June 20, Sierra Club received a form email from an EPA institutional email address that communicated a "final disposition: Records Not Reasonably Described." Concurrently, Sierra Club received another email, from the EPA attorney-advisor on the case, attaching a letter that indicated, *inter alia*, "EPA is unable to process your request because it fails to adequately describe the records sought," and that "[y]our request does not seek specific records but is rather a question framed as a FOIA request." Exhibit B at 1. The letter acknowledged the parties' call earlier that day, yet did not acknowledge either the *PEER* case or EPA's pledge (two hours earlier) to examine that case and to confirm its reassessed determination in light of that examination. *See id.* at 2. The letter also set out the option to appeal that determination within 90 days of the letter's date. *Id.*

53. The next day, June 21, Sierra Club emailed EPA, both to provide the *PEER* materials as promised the day before, and to seek clarification as to whether the final disposition and letter sent to Sierra Club after the parties' call should be understood to supersede their oral agreement that EPA would be considering whether to reassess its determination in light of the *PEER* decision and the fact that EPA had successfully cognized and responded to a materially identical FOIA request in the past.

54. On June 25, having received no response, Sierra Club followed up with another email asking for clarification.

55. On June 27, the EPA attorney-advisor wrote back and confirmed that the letter constituted the agency's final determination. EPA stated that "[a] copy of the PEER decision was made available internally and given appropriate consideration after our conversation." (It bears noting that, because the parties' June 20 conversation ended at

approximately 4:30 pm and EPA sent its official determination later around 7:00 pm, any such "consideration after our conversation" would have needed to take place during that time frame.) "Consequently," the email continued, "our response was consistent with the agreement to respond in writing before July 8th." EPA further stated: "Notwithstanding the similarities between your FOIA request (EPA-HQ-2019-005176) and the request submitted by PEER, EPA has determined that your request is not reasonably specific. We, nonetheless, welcome the opportunity to clarify your request and will reopen the file for that purpose. If interested, please feel free to contact me so that we may discuss a more precise description of the specific records you are seeking."

56. The same day, June 27, Sierra Club replied via email to ask to speak on the phone that day as a last attempt to clarify the precise reasons for EPA's denial.

57. Three working days later, on July 2, EPA wrote back and agreed to speak on the phone the following day.

58. On July 3, Sierra Club spoke on the phone with the same EPA senior attorney and attorney-advisor. Sierra Club explained that, before proceeding with an administrative appeal, Sierra Club wanted to understand completely clearly what the agency's "not reasonably specific" denial meant, coupled with the agency's "welcom[ing] the opportunity to clarify [the] request" meant. Namely, Sierra Club asked for confirmation on whether EPA in fact did not understand what the existing request sought or, conversely, EPA instead understood the request but simply deemed it a non-cognizable or improper request. The senior attorney responded that it was "the latter," and further explained that "we do understand [the request]" but believe it is "not reasonable." Sierra Club then asked if the agency simply disagreed with the *PEER* decision, which rejected

that same reasoning in a materially analogous case. The senior attorney responded that

the agency had reviewed the *PEER* case but believed Sierra Club's instant FOIA request

was "different." Sierra Club asked if the senior attorney would like to elaborate on how

or why the instant request and circumstances are different from those in the *PEER* case,

and he declined. Sierra Club thanked the EPA staff for their time and efforts, and advised

them that Sierra Club would therefore proceed to file an administrative appeal.

### *Sierra Club's Administrative Appeal, and EPA's Unjustified Failure to Rule Thereon*

59. Sierra Club filed its administrative appeal of EPA's adverse determination late in the

afternoon on July 11, 2019, making July 12 the effective date of EPA's receipt of the

appeal.

60. The default statutory deadline for EPA to rule on Sierra Club's administrative appeal was

August 9, 2019. *See* 5 U.S.C. § 552(a)(6)(A)(i). On August 1, however, an EPA attorney-

advisor wrote to Sierra Club to claim "unusual circumstances" on the basis that ruling on

the appeal required consultation with multiple agency components, which permitted EPA

to exercise the statute's single extension of 10 working days. *See id.* § 552(a)(6)(B)(i).

The attorney advisor pledged to respond no later than the new, statutorily-extended

deadline, August 23, 2019.

61. On August 22, an EPA Assistant General Counsel for FOIA Litigation & Related

Counseling wrote to Sierra Club to advise that the agency "[wa]s close to finalizing the

appeal determination but will require a brief extension of time to complete the processing

of your appeal." She further advised that her office "expect[ed] to be able to complete

your appeal by Friday, August 30, 2019," *i.e.*, one week after the statutory deadline. The

Assistant General Counsel did not offer an explanation for the agency's inability to meet

the statutory deadline, which already accounted for "unusual circumstances" through the two-week extension the agency had already invoked.

62. The next day, August 23, Sierra Club wrote to indicate that although it did not concede the lawfulness or reasonableness of EPA missing the statutory deadline, it would wait the additional week for the agency's ruling, being without a remedy as a practical matter to force EPA to rule any sooner than August 30.

63. At the end of the day on August 30, the same Assistant General Counsel wrote to Sierra Club to advise that it would "require an additional extension of time to complete the processing of your appeal" and that it "expect[ed] to be able to complete [the] appeal by Friday, September 13, 2019." Again, Sierra Club received no explanation for EPA's failure to meet its own unilateral extension, let alone the earlier statutory deadline.

64. Sierra Club wrote back the same day to reiterate that EPA's failure to rule by August 23 was unlawful and unreasonable. Sierra Club also requested that EPA immediately provide a written explanation of its purported need for an additional three-week extension beyond the single two-week extension permitted by law, citing the statute's requirement that an agency must "set[] forth the unusual circumstances for such extension." 5 U.S.C. § 552(a)(6)(B)(i). Further, Sierra Club indicated that if EPA were to fail to rule on Sierra Club's appeal by the new date EPA had specified, Sierra Club would consider judicial recourse in light of the agency's repeated and statutorily impermissible delays.

65. On September 13 at the end of the day, a different Assistant General Counsel for EPA wrote to Sierra Club, advising that EPA yet again would not provide its ruling by the date it had said it would. This Assistant General Counsel stated: "By email dated August 30, 2019, the Agency explained an extension of time was needed complete the processing of

your appeal and that EPA expected to complete the appeal by September 13, 2019. At this time, EPA still needs additional time to complete the processing of your appeal. EPA will continue to keep you updated."

66. The next working morning, on September 16, Sierra Club wrote back to express its disappointment that EPA would continue unlawfully to withhold a ruling on Sierra Club's appeal, and that this time, moreover, EPA had not even identified a date by which the agency intended to rule. Sierra Club further expressed disappointment that EPA had declined to provide a meaningful explanation for its failure to respond. Sierra Club advised that, "[i]n light of EPA now not even offering a date by which it will supposedly rule, and declining to explain the reasons for its continued and indefinite failure to do so, it is impossible at this juncture for Sierra Club to have any confidence or idea when—or if—the agency will in fact provide a ruling." In closing, Sierra Club asked EPA: "Please let me know this week if EPA can provide any concrete assurance about providing its determination on this administrative appeal by a specific date in the near future."

67. To date, EPA has never responded to Sierra Club's September 16 email or otherwise followed up with Sierra Club. It is now more than a month and a half past the statutory deadline for EPA to rule on Sierra Club's administrative appeal.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT,**
**5 U.S.C. § 552**

68. Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

69. EPA is statutorily obligated to timely provide FOIA requesters with non-exempt records that are responsive to their requests. 5 U.S.C. § 552(a)-(b).

70. EPA has failed to produce for Sierra Club any documents responsive to Sierra Club's request, in violation of FOIA.

71. EPA's aforementioned failure finds no justification in FOIA, in EPA's FOIA-implementing regulations, or in applicable jurisprudence.

72. In light of EPA's failures, Sierra Club is entitled to promptly receive from EPA records that are responsive to its requests and are not exempt under FOIA's statutory exclusions.

73. Sierra Club and its members are suffering legal wrongs and injury due to EPA's failure to comply with FOIA, and will continue to suffer and be injured as long as EPA continues to violate its FOIA obligations to produce records to Sierra Club.

74. The requested relief will redress the aforementioned wrongs and injuries caused by EPA.

75. Sierra Club has exhausted its administrative remedies and has no other adequate remedy at law to redress these legal violations and injuries.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-06

76. Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

77. In the alternative or in addition to Sierra Club's First Cause of Action, Sierra Club alleges that EPA's failure to produce pertinent non-exempt records in response to its FOIA request constitutes agency action that is "unlawfully withheld or unreasonably delayed," "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(1)-(2).

78. Sierra Club and its members are suffering legal wrongs and injury due to EPA's failure to comply with FOIA, and will continue to suffer and be injured as long as EPA continues to violate its obligations to produce records to Sierra Club consistent with the requirements and principles of the APA.

79. The requested relief will redress the aforementioned wrongs and injuries caused by EPA.

80. Sierra Club has exhausted its administrative remedies and has no other adequate remedy at law to redress these legal violations and injuries.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment against EPA as follows:

81. Declaring that EPA has violated FOIA (or, in the alternative, the APA) by denying Sierra Club's FOIA request on an improper basis, and failing to produce all responsive, non-exempt records in response to Sierra Club's legitimate request;

82. Ordering EPA to respond to Sierra Club's FOIA request as the agency is statutorily required to do, and thus to promptly search for, identify, and produce all responsive, non-exempt records to Sierra Club as swiftly as practicable and on a rolling basis;

83. Ordering EPA to produce an index identifying any documents or parts thereof that the agency may seek to withhold, along with the basis for any such withholding, in the event that EPA determines that certain records are exempt from disclosure;

84. Retaining jurisdiction over this matter pending EPA's response and production of documents, in order to rule on any further unlawful and unreasonable delays, any contested assertions by EPA that records are exempt from disclosure, or any other related issue or dispute, *see* 5 U.S.C. §§ 552(a)(4)(B), 552(a)(6)(C)(i);

85. Awarding Sierra Club its costs and reasonable attorney fees, *see* 5 U.S.C. § 552(a)(4)(E);

   *cf.* 28 U.S.C. § 2412; and

86. Granting any such other and further relief as the Court deems just and proper.

Dated: October 9, 2019                     **SIERRA CLUB ENVIRONMENTAL LAW**
                                           **PROGRAM**


                                           By:  /s/ Matthew E. Miller
                                           _____

                                           Matthew E. Miller
                                           District of Columbia Bar # 1015222
                                           Staff Attorney, Sierra Club
                                           50 F Street NW, 8th Floor
                                           Washington, DC 20001
                                           Tele: 202-650-6069
                                           Email: matthew.miller@sierraclub.org

                                           *Counsel for Plaintiff*