UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SIERRA CLUB, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 19-cv-03018 (APM) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

In April 2019, Plaintiff Sierra Club submitted a Freedom of Information Act ("FOIA") request to Defendant U.S. Environmental Protection Agency ("EPA") seeking records concerning a public statement made by then EPA Administrator Andrew Wheeler that the effects of climate change remained decades away. EPA staff refused to produce any records and, after Plaintiff's subsequent administrative appeal remained unanswered beyond the statutory response period, Sierra Club filed this lawsuit. Post-filing, EPA complied with Sierra Club's request in full. Sierra Club now asserts that it is both eligible and entitled to attorney's fees under FOIA. *See* Pl.'s Mot. for Atty's Fees & Costs, & Mem. of P & A in Supp. Thereof, ECF No. 23 [hereinafter Pl.'s Mot.]. The court agrees. For the reasons set forth below, Sierra Club's motion is granted.

**II.**

Under FOIA, a court "may" award attorney's fees to a requester in a case in which a requester has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Whether to grant a fees award involves a two-part inquiry into the requester's eligibility and entitlement to such an award.

*See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C Cir. 1981). A requester is deemed "eligible" for a fee award if it has "substantially prevailed." 5 U.S.C. § 522(a)(4)(E)(i). A requester "substantially prevails" if it has "obtained relief" through either (1) a "judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [requester's] claim is not insubstantial." *Id.* § 522(a)(4)(E)(ii). Only the second of these criteria—known as the "catalyst theory"—is applicable here. *See Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020). Under that theory, the relevant question is whether "the institution and prosecution of the litigation caused the agency to release the documents obtained." *Id.* at 97 (cleaned up). Establishing causation requires more than a sequential showing of the mere filing of a complaint and the subsequent release of records. *See id.* Rather, the requester bears the burden of demonstrating "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Id.* (quoting *Pub. Citizen Health Res. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).

If the requester is deemed eligible for fees, it still must establish entitlement to an award. That inquiry requires consideration of four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016) (internal quotation marks omitted). "No one factor is dispositive," except that "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

### III.

The court presumes the parties' familiarity with the facts presented and therefore does not formally recite them here. Instead, the court references the facts as necessary to evaluate the parties' arguments.

### A.

Plaintiff's FOIA request contained two parts: (1) "All records that Administrator Wheeler relied on in asserting that 'most of the threats from climate change are 50 to 75 years out,'" and (2) "All records produced, commissioned, or otherwise obtained by EPA that support the conclusion that 'most of the threats from climate change are 50 to 75 years out,'" other than those encompassed by the first request. Compl., ECF No. 1, Ex. A, ECF No. 1-1, at 1. EPA challenges Plaintiff's eligibility for fees with respect to both parts of this request. *See* Def.'s Opp'n to Pl.'s Mot., ECF No. 27 [hereinafter Def.'s Opp'n], at 6–8.

As to part one of Plaintiff's request, EPA argues that the requisite causation between the lawsuit and production of records is lacking. *See id.* at 6–7. EPA says it "was prepared to grant, in part, Sierra Club's administrative appeal and produce records responsive to the first part of its request prior to Sierra Club filing its Complaint," and did so "soon after" the Complaint was filed. *Id.* at 1. The factual assertion that EPA was prepared to produce records rests on the Declaration of Elizabeth White, EPA's Director of the Office of Executive Secretariat. She states, "I understand that [the Office of General Counsel] had prepared a draft appeal determination letter that would have granted the appeal as to Part 1 of Sierra Club's request and resulted in production of the records responsive to Part 1 by my office, but denied the appeal as to Part 2." Def.'s Opp'n, Decl. of Elizabeth White, ECF No. 27-1 [hereinafter White Decl.], ¶ 14. "However," White continues, "the appeal determination letter was under review and not finalized at the time that

3

Sierra Club filed suit." *Id.*  As for the second part of Plaintiff's FOIA request, EPA contends that a necessary, post-litigation clarification of part two of Plaintiff's request enabled EPA to conduct a reasonable search for responsive records, thereby severing the causative link between lawsuit and production.  Def.'s Opp'n at 7–8.  Neither of these arguments is convincing.

EPA's suggestion that it would have produced records in response to part one of the FOIA request absent the lawsuit fails for three reasons.  *First*, that assertion is flatly contradicted by EPA's responsive pleading.  In its Answer, EPA denied that it had improperly withheld records and asserted as affirmative defenses that "[t]he Complaint fails in whole or in part to state a claim upon which relief can be granted," "Plaintiff is not entitled to information protected from disclosure by one or more exemptions to FOIA," and "Plaintiff's request does not reasonably describe the records sought."  Answer, ECF No. 11, at 13.  Those defenses applied to the request in its entirety, and nowhere in its Answer did EPA indicate that it was prepared to produce records in response to part one of the FOIA request.  It was only when the parties filed their initial Joint Status Report on January 6, 2020, that EPA indicated for the first time that it had searched for and would be producing records responsive to that portion of the FOIA request.  *See* Joint Status Report, ECF No. 14, at 1.  EPA cannot walk back from the litigation position it took at the start of this case.

*Second*, the White Declaration supplies weak evidence of the agency's purported readiness to deliver some records before Plaintiff filed suit.  White says she "understand[s]" that the Office of General Counsel had drafted an appeal determination letter but that the letter was not yet finalized when Sierra Club filed suit.  White Decl. ¶ 14.  White, however, supplies no details for this assertion.  She does not, for instance, identify with whom she spoke in the Office of General Counsel, state when she spoke to such person, or explain the lengthy, indefinite delay for the appeal

4

decision, *see* Pl.'s Mot. at 11–13 (describing the months-long delay in receiving a decision on appeal, which ultimately never issued). Nor does White attach a draft of the purported appeal determination letter. And she does not explain why EPA did not produce records notwithstanding Plaintiff's filing suit; nothing prevented the agency from responding to only one of Plaintiff's two requests. The court therefore finds the record evidence that EPA intended to disclose some records before Plaintiff filed this action to be weak.

*Third*, EPA cites no case for the proposition that a newly revealed past intent to disclose records can defeat the element of causation. A recent case from the D.C. Circuit illustrates the weakness of EPA's position. In *Grand Canyon Trust*, the D.C. Circuit held that a plaintiff had failed to establish causation where both recipient agencies "completed their disclosures within four months of the start of the litigation." 947 F.3d at 97. But in that case, neither agency had given any reason to suggest "it would fail to comply with the request" prior to the initiation of the lawsuit. *Id.* "[T]o the contrary," both had made partial releases of records and had given "the plaintiff their predictions as to when production would be completed." *Id.* Here, in stark contrast, after initially suggesting to Plaintiff that it would search for responsive records, EPA advised that the request was not "reasonably specific" and refused to commit to disclosure, causing Plaintiff to take an administrative appeal. *See* Pl.'s Mot., Ex. A., ECF No. 23-1 [hereinafter Miller Decl.], ¶¶ 25–29. When EPA dragged its feet in issuing a decision on appeal, Plaintiff was left with no choice but to file suit. In such circumstances, it is "more probable than not," *Grand Canyon Tr.*, 947 F.3d at 97 (internal quotation marks omitted), that filing suit caused EPA to reverse the only position it ever articulated to Plaintiff—that it would not produce records, *see Church of Scientology*, 653 F.2d at 588 ("If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative process was the actual

reason for the agency's failure to respond to a request, then it cannot be said that the complaint substantially prevailed in his suit." (internal quotation marks omitted)).

EPA's argument as to the second half of Plaintiff's request fares no better. EPA contends that after the litigation commenced, Plaintiff "materially changed its request" by "clarif[ying] its search methodology," which allowed the agency to conduct a search that it could not before. Def.'s Opp'n at 7. But that is a dubious assertion. For one, Plaintiff never modified the request itself; rather, after commencing litigation the parties reached agreement on a search protocol to identify responsive records. *See* Miller Decl. ¶¶ 42–44. What's more, the approach the parties eventually took was one that Plaintiff had proposed since the outset of the administrative process. *See id.* ¶ 19 (explaining that Plaintiff initiated discussion with the agency on this topic as early as three days after the request was submitted). EPA never explains why during the administrative proceedings it refused to reach an agreement on search terms, and instead stood firm that the request was not "reasonably specific."

The agency's refusal is particularly indefensible given that it had only recently created a search methodology to respond to a very similar FOIA request. In *Public Employees for Environmental Responsibility v. EPA* (*PEER*), the plaintiff made a two-part request for records concerning a statement about climate change made by the then Administrator (that human activity was not "a primary contributor to global warming"). 314 F. Supp. 3d 68, 71 (D.D.C. 2018) (internal quotation marks omitted). Like Plaintiff's request, the first portion of the request in *PEER* asked for documents "relied upon" by the Administrator's statement, and the second portion asked for any EPA records "that support[ed]" the conclusion that human activity was not the largest factor driving global climate change. *See id.* EPA asserted in litigation that the second request— which resembles the second request here—failed to "reasonably describe" the records sought, *id.*

6

at 79–80, but the court soundly rejected that view, *see id.* at 80.  EPA thereafter developed search protocols to produce records in response to the second request.  *See* Joint Status Report, *PEER*, No. 17-cv-652 (BAH) (D.D.C. July 6, 2018), ECF No. 29.  These events in *PEER* occurred less than a year *prior* to EPA's April 2019 receipt of Plaintiff's FOIA request in this case.  Yet, Plaintiff's months-long, repeated attempts to convince the agency that *PEER* provided a template for its requests fell on deaf ears.  *See* Miller Decl. ¶¶ 19–20, 26–29.  It took Plaintiff's suit to change EPA's mind.  As to the second request then, Plaintiff meets the definition of "prevailing party."

**B.**

Having determined that Plaintiff is eligible for fees, the question remains whether Plaintiff is entitled to fees.  Recall, the court must consider four factors in that evaluation: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *Morley*, 810 F.3d at 842 (internal quotation marks omitted).  EPA here focuses primarily on the fourth of these factors.  It contends that its "positions throughout the response to the request were reasonable."  Def.'s Opp'n at 10.  The court cannot agree.

As a threshold matter, mere reasonableness of an agency's position does not foreclose the award of fees.  Only if "the Government's position is correct as a matter of law" will that be "dispositive" on the question of fees.  *Davy*, 550 F.3d at 1162 (internal quotation marks omitted).  If, on the other hand, "the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus."  *Id.* (internal quotation marks omitted).  Here, EPA does not contend that it is "correct as a matter of law," only that its actions were "reasonable."  Def.'s Opp'n at 9–10.

But the government's refusal to produce *any* records before Plaintiff filed suit was not reasonable. EPA is silent as to the first part of Plaintiff's request. It offers no defense for its refusal to produce records. *See id.* at 9–13. As to the second portion of the request, EPA stands by its position that Plaintiff failed to "reasonably describe" the records sought and that the second portion created an undue burden. *See id.* (internal quotation marks omitted). But *PEER* largely puts these arguments to rest. To be sure, *PEER* was not binding on the agency, and there are some differences between the cases. However, those differences are not substantial, and the record reflects the agency's seeming refusal to even consider the case as a helpful guidepost in working through concerns about Plaintiff's second request. *See* Miller Decl. ¶¶ 26–27 (describing how, on June 20, 2019, after being told by a senior attorney that the agency would consider *PEER*, Plaintiff received notice two hours later—before sending *PEER*-related materials to the senior attorney—that the agency had finalized its position not to produce records). The agency's unwillingness to engage on *PEER* was itself unreasonable. Indeed, it is telling that immediately after filing suit, and with the benefit of counsel from the U.S. Attorney's Office, EPA agreed to run searches that it had long resisted. *See id.* ¶ 42. This is not the kind of agency response to a legitimate FOIA request that Congress had in mind, and it is precisely the type of response that Congress thought warranted an award of attorney's fees. *See Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977) (summarizing Congress's intent with respect to the fourth criterion as to "ordinarily award [fees] if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester").

The court must weigh EPA's obstinance alongside the remaining factors. All of those factors support an award of fees. EPA claims that the public benefit was minimal "because the records produced were largely in the public domain," Def.'s Opp'n at 14, but that argument fails

twice over.  First, EPA does not identify which records were in the public domain.  Second, EPA misses the point:  the public plainly derived a benefit because it learned that the Administrator relied on no records in making the statement that "most of the threats from climate change are 50 to 75 years out."  *See* Pl.'s Mot. at 26–27 (internal quotation marks omitted) (stating that Plaintiff publicized what it learned "through multiple media channels").  Additionally, Plaintiff derived no commercial benefit from the disclosure, and it had no other private incentive to obtain the records. *See Kwoka v. IRS*, 989 F.3d 1058, slip op. at 7 (D.C. Cir. 2021) (considering the second and third factors together and assessing "whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees" (quoting *Davy*, 550 F.3d at 1160)).[1]  Thus, even if the government's position had some degree of reasonableness, given the strength of the other three factors in favor of a fee award, Plaintiff would prevail.  In sum, the four factors the court is required to consider all weigh in favor of an award of attorney's fees.

### C.

Finally, EPA argues that the amount of fees sought is unreasonable and should be reduced. The court largely declines the agency's request.

First, EPA urges the court to cut the fees request in half because Plaintiff "initially refused to work with EPA to resolve Part 2" of its request during the administrative process.  Def.'s Opp'n at 15.  The record reveals otherwise.  It was EPA that refused to meaningfully engage with Plaintiff. True, EPA representatives communicated with and met with Plaintiff to discuss its request, but negotiations moved backward once senior agency attorneys become involved.  *See* Pl.'s Mot. at 7–9.  After EPA communicated that a search responsive to Plaintiff's request was "already under

---

[1] EPA also contends that Plaintiff's "non-profit status does not automatically demonstrate that it prevails on the second and third factors," Def.'s Opp'n at 14, but the court need not reach that contention because Plaintiff makes no such argument.

9

way," *id.* at 7, a senior agency attorney backtracked, calling the request not "reasonably specific" and informing Plaintiff that EPA would not respond to it, *id.* at 8. Indeed, the record reveals no serious effort by EPA to accommodate Plaintiff's request. EPA's foot-dragging during the administrative appeal, *see id.* at 11–13, only underscores the agency's lack of diligence.

Second, EPA argues that the fees should be reduced for work relevant to part one of the request "as EPA was prepared to release documents responsive to Part 1 of Sierra Club's request before the initiation of litigation." Def.'s Opp'n at 15. But for reasons already discussed, the court rejects EPA's contention that the litigation did not cause the agency to produce records in response to part one of Plaintiff's request. *See supra* pp. 3–6.

Third, in a single sentence, EPA contends that fees should be reduced "by 50% for any activity before January 17, 2020, which is when the parties focused on reaching agreement on the search methodology for Part 2 of Sierra Club's request." Def.'s Opp'n at 16. But the court sees no reason why Plaintiff should be punished for EPA's tardiness in coming to an agreement that was available to it well before the litigation began—that is, EPA's acquiescence to similar search terms as those used in *PEER*. *See supra* pp. 6–7.

Finally, EPA maintains that fees should be reduced for various discrete tasks, including drafting the Complaint and "related administrative tasks," "vague descriptions of how time was spent and [] fees for *pro hac vice*-related work," and "duplicative charges, as there were two attorneys working on certain matters." Def.'s Opp'n at 16. None of these arguments is availing. The court has reviewed the billing submissions of counsel and finds these timekeeping logs to be sufficiently descriptive and, with one exception, to reflect reasonable hours expended on this matter. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (stating that the "supporting documentation must be of sufficient detail and probative value to enable the court

to determine with a high degree of certainty that such hours were actually and reasonably expended" (cleaned up)).

With respect to the Complaint, it is true that it is more detailed than the usual FOIA pleading, but counsel appears to have expended only approximately 10 hours in drafting and filing it, *see* Pl.'s Mot., Ex. D, ECF No. 23-4 [hereinafter Ex. D], at 3 (entries for Matthew Miller on 10/1/19 ("draft and revise complaint" – 6.5 hours, and various administrative Complaint-related matters – 2.8 hours); *id.* at 4 (single entry for Joseph Halso "[r]eview and edit draft of complaint" – .75 hours). EPA itself concedes that courts "routinely allow eight to twelve hours for a complaint." Def.'s Mot. at 16. EPA also does not specify which "vague descriptions" of time it protests. *See id.* And, although it objects to "duplicative charges," it does not point to any duplicative time entries. *See id.* EPA notes that two lawyers worked on the case, but there is no *per se* rule that only a single lawyer can work on FOIA litigation. In any event, the work of the second lawyer during the merits phase of the case involved slightly more than five hours, and Plaintiff's lead counsel represents that the work of the second chair reduced his workload and was billed at a lower rate. *See* Ex. D at 4; Pl.'s Reply Br. in Supp. of Pl.'s Mot., ECF No. 29, at 25.

The court will, however, reduce the number of hours spent on *pro hac vice* matters. Those hours are not compensable. *See Role Models Am.*, 353 F.3d at 973 (rejecting compensation for time spent on an application to the D.C. Bar). Thus, the court will reduce attorney Miller's time by 1.4 hours and attorney Halso's time by 1.75 hours. *See* Ex. D at 3 (Miller's time entries on 12/1/19 and 12/16/19 – 1.4 hours); *id.* at 4 (Halso time entry on 12/1/19 – 1 hour, Halso time entry on 1/16/20 – .75 hours).

## IV.

For the foregoing reasons, the court grants Plaintiff's Motion for Attorney's Fees and Costs. The award below reflects the hours expended during the merits phase of this litigation and on the instant fees petition (including the reply brief). The court calculates fees using the USAO fees matrix, to which EPA has offered no objection.

**Table 1: Attorney's Fees**

| Timekeeper | Hours | Billing Rate | Total |
|---|---|---|---|
| Matthew Miller | 78.2 | $433 | $33,860.60 |
| Joseph Halso | 15.85 | $365 | $5,785.25 |
| Lauren Hogrewe (paralegal) | 8.9 | $173 | $1,539.70 |
| | | | Total: $41,185.55 |

**Table 2: Final Award**

| Fees | $41,185.55 |
|---|---|
| Costs | $400[2] |
| Total Award | $41,585.55 |

Dated: March 31, 2021

Amit P. Mehta
United States District Court Judge

---

[2] The court excludes the $100 *pro hac vice* fee.

12